The Yellow Cab and Baggage Company, Inc. v. Commissioner.
Yellow Cab & Baggage Co. v. Commissioner
Docket No. 21711.
United States Tax Court
1950 Tax Ct. Memo LEXIS 99; 9 T.C.M. (CCH) 808; T.C.M. (RIA) 50225; September 15, 1950
*99 Robert S. Dougherty, Jr., Esq., for the petitioner. William B. Springer, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves deficiencies in excess profits taxes for 1944 and 1945 in the amounts of $1,382.56 and $1,819.62, respectively. The issue is whether there should be included in equity invested capital the amount of $27,932.71 for good will acquired by the petitioner's predecessor in 1923 for stock. The returns of petitioner for the taxable years were filed with the collector for the district of Kansas. Findings of Fact The petitioner, a Kansas corporation with its principal place of business in Topeka, Kansas, was organized in 1939 in a nontaxable reorganization. It was engaged in the taxicab, transfer and storage business. Petitioner's predecessor was a Delaware corporation of the same name, hereinafter to be referred to as the Delaware corporation. It was organized on April 3, 1923, by Roy Payne, B. T. Payne, and Guy L. Hursh, with an authorized capital stock of $80,000, consisting of 600 shares of voting common stock, each of a par value of $100, and 200 shares of nonvoting preferred stock *100 of a like par value, for the purpose, among other things, of engaging in the taxicab, baggage and transfer business. The incorporators became the first directors of the corporation and Roy Payne, its first president. On May 8, 1923, 8 shares of common stock were issued to Roy Payne and one share each to the other incorporators. For many years prior to 1923 Roy Payne had been engaged in the taxicab and baggage business in Topeka, Kansas. On October 20, 1923, the directors of the Delaware corporation adopted a resolution to purchase the business of Roy Payne, including good will, and assume all of his obligations "connected with or growing out of the operation of said business" for 372 shares of its common stock. On the same day, the Delaware corporation and Roy Payne executed an agreement reading, in part, as follows: "Now, therefore, it is agreed between the said Yellow Cab and Baggage Co. and Roy Payne that said corporation shall receive and take over all of the right, title and interest of the said Roy Payne in and to above mentioned and described property and business including good will and all accounts and bills receivable and in consideration therefor the said Yellow Cab *101 and Baggage Co. shall issue and deliver to said Roy Payne three hundred seventy-two (372) shares of common stock of said corporation and assume all of the obligations of the said Roy Payne contracted in connection with or growing out of the operation of said business. It is understood between the parties hereto that all rights and privileges now held and possessed by said Roy Payne as an incident to his said business shall pass to and vest in said corporation in consideration of said exchange." The Delaware corporation began to operate as a corporation on November 1, 1923, when it started to keep books for its activities. The first income tax return of the corporation was for the months of November and December 1923. On February 20, 1923, Roy Payne gave to Darrow B. Fulton his note for $5,000 to evidence an advance of that amount to him. The note was payable in $5,000 preferred stock and $2,000 common stock, par value in each case of the Delaware corporation as soon as the corporation could be organized and certificates for the stock obtained. Darrow B. Fulton subscribed for 50 shares of the preferred stock in or after July 1923. The account "Notes Payable - Others" of the Delaware *102 corporation contains a credit entry under the date of November 1, 1923, in the amount of $5,000 with the name "Fulton" written under the heading "Items." On November 9, 1923, Roy Payne received certificates for 342, 20, and 2 shares, respectively, of common stock of the corporation, each of a fair market value of $100. On November 10, 1923, Roy Payne transferred by endorsement the certificate for 20 shares to Darrow B. Fulton and on the same date the certificate was reissued in favor of Fulton. On November 1, 1923, the corporation issued certificates in favor of Darrow B. Fulton for a total of 50 shares of its preferred stock. The 50 shares were represented by preferred stock certificates Nos. 1-5; and no preferred stock was issued to Roy Payne at or before the completion of the transfer. Other preferred stock was issued thereafter in 1923, commencing November 10, but none of it was issued to Roy Payne. During November 1923 the Delaware corporation sold 75 shares of its common stock in lots of from one to 10 shares, all at par value. Fifty-eight shares were sold for cash. The journal entries made by the Delaware corporation on November 30, 1923, included the following: Notes Payable - Others
$ 5,000.00
Capital Stock, Pfd. Subscribed - D. B. Fulton Note
$ 5,000.00
Roy Payne, Personal
9,267.29
Good Will
27,932.71
Capital Stock - Com. Unissued
37,200.00
*103 The total credits to a ledger account entitled "Capital Stock - Common Unissued" in 1923 were $48,400, an amount equal to the par value of the stock issued and not cancelled in 1923. The amount includes $2,100 for which there does not appear to be a balancing entry. Roy Payne was recognized as a very successful operator of taxicabs. At the time of transfer of his business to the Delaware corporation he had exclusive baggage hauling privileges at all of the railroad stations in Topeka, "standing rights" at all of the hotels and depots in Topeka, an elaborate telephone system for dispatching cabs, exclusive contracts for hauling property from theaters and other places, exclusive taxicab rights at ball parks and other parks, and concessions for transporting passengers and property to the Kansas State Fair grounds. The income tax return filed by the Delaware corporation for 1923 reported $37,200 of common stock and no preferred stock outstanding on November 1, 1923, and $13,000 of preferred stock outstanding at the close of the year. The Delaware corporation reported net income of $5,216.06 for 1924 and $2,499.48 for 1925. The latter amount was increased to $3,132.36 by an examining *104 agent. In its returns for the taxable years, petitioner claimed the amount of $25,398.87 as invested capital for cash and property paid in for stock in the nontaxable reorganization in 1939. Respondent determined in connection with the deficiencies that the amount paid in was $15,702.26, consisting of assets having a basis for loss in the amount of $26,783.63, less liabilities assumed in the amount of $11,081.37. He denied the contention of petitioner that invested capital should include the amount of $27,932.71 for good will purchased from Roy Payne in 1923 for stock, upon the ground that immediately after the transfer, the transferor was in control of the corporation and that the corporation acquired his basis. The good will had a fair market value of $27,923.71 when transferred to the Delaware corporation for stock. Opinion The difference between the parties under the issue is whether Payne was in control of the Delaware corporation immediately after the transfer of property to it in 1923 in exchange for stock. No contention is made by the petitioner that Payne had a basis for any good will involved in the transaction. The applicable statute is section 202 (c) (3) of the Revenue *105 Act of 1921 which provides that no gain or loss is recognized where a person transfers property to a corporation and immediately after the transfer is in control of the corporation. Control exists, under the definition of the term "in control" in the statute, when the transferor owns at least 80 per centum of the voting stock and at least that much of the total number of shares of all other classes of stock of the corporation. Payne received 372 shares of common stock but none of the preferred stock was issued to him. The corporation issued 50 shares of the preferred stock to Fulton on November 1, 1923. Petitioner says that the transfer was made on November 1, 1923, and that the preferred stock issued to Fulton at that time prevented control in Payne. Respondent's view is that the transfer occurred on October 20, 1923, when as a result of a contract entered into on that date Payne became entitled to receive 372 shares of the common stock of the transferee. The contract between Payne and the Delaware corporation did not specify an effective date for the transfer of the property. The Delaware corporation entered the property and liabilities of Payne in its books when it opened them *106 on November 1, 1923, and did not account for any use of the assets prior thereto for tax purposes. Under the circumstances, it is evident that formal transfer of ownership occurred not earlier than that date. . On November 1, 1923, Payne had a contractual right to receive 372 shares of common stock of the Delaware corporation for the net assets of the business. Without more it could be said that he was in control of the transferee, but at that time, by the terms of an agreement entered into by him in February 1923 with Fulton, he was obligated to issue to Fulton 50 shares of the preferred stock and 20 shares of common stock in satisfaction of a note in the amount of $5,000 for an advance. The assumption of the debt by the corporation and the issuance of the stock as soon as it could be accomplished was part of the plan for the exchange and must be taken into account in determining the question of control viewed as a whole. ; ; ; , *107 aff'd., . We, therefore, regard the contract as merely executory, at least until November 1, 1923, when, within the provisions of the agreement of transfer that certain of Payne's obligations were assumed by the corporation, the corporation issued to Fulton 50 shares of preferred stock. In fact, since Payne did not receive his common stock (except the original 8 shares on May 8, 1923) until November 9, 1923, it seems apparent that the transfer was not complete until that date, for, in the absence of any bill of sale or other formal transfer of the property from Payne to the corporation, reason forbids that the transfer be considered completed until Payne received his consideration. But on November 1 Fulton received preferred stock, all of the preferred stock issued until after November 9, 1923, and Payne had received none by either date. Therefore, in view of the fact that Payne did not, on completion of the plan, hold any of the outstanding preferred stock, he was not in control of the Delaware corporation immediately after the transfer, and it was error for respondent to regard him as being in control thereof. Respondent in determining the deficiencies *108 made no finding on the value of good will acquired in the transfer, having limited his determination to the question of control of the transferee immediately after the transfer. Petitioner requests us to find a value of $27,932.71, an amount equal to the fair market value of the stock issued therefor. Respondent argues, without denying that there was good will of some value, that petitioner has not met his burden of proof. The evidence on the value of the stock consists of book entries showing sales of the stock. In November 1923 there were 23 sales of stock in lots of from 1 to 10 shares, all at par. Fifty-eight shares were sold for cash. The other shares were sold on credit or for accounts payable. No reason appears for declining to accept the sales as evidence of the worth of the stock. From such evidence we have found that the common stock had a fair market value of $100 a share. Respondent makes no contention that good will had a value different from the fair market value of the stock. Accordingly, we find that the good will paid in for stock had a fair market value of $27,932.71. Decision will be entered under Rule 50.